IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| VINCENT MORGAN as father and guardian, for the use and benefit of S. MORGAN, a minor,<br><br>                        Plaintiff,<br><br>      v.<br><br>WALMART, INC.,<br><br>                        Defendant. | Case No. 3:20-cv-00213-TMB<br><br>**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. 18)** |

## I.    INTRODUCTION

This matter comes before the Court on Defendant Walmart Inc.'s ("Defendant" or "Walmart") Motion for Summary Judgment (the "Motion").[1] Plaintiff Vincent Morgan ("Plaintiff" or "Morgan") opposes the Motion.[2] Having considered the briefing,[3] the Court concludes that genuine issues of fact preclude summary judgment. Consequently, the Court **DENIES** the Motion at Docket 18.

---

[1] Dkt. 18 (Motion); Dkt. 30 (Reply).

[2] Dkt. 26 (Opposition).

[3] The parties did not request oral argument, and the Court finds the matter suitable for disposition without argument.

## II.    BACKGROUND

*A. Undisputed Facts*

Plaintiff brings this lawsuit as the father and guardian of his son, S.M., who was injured at the Debarr Walmart store on June 21, 2020.[4] Plaintiff was pushing S.M. in a shopping cart as the Morgan family left the store.[5] The store has interior and exterior automatic doors: a customer leaving the store must walk through the interior and then exterior automatic doors.[6] On June 21, 2020, when the Morgans were leaving the store, the interior doors were set to open fully while the exterior doors were set to open only partially.[7] The Morgans walked through the interior doors side-by-side without incident.[8] But as they proceeded through the exterior doors, S.M.'s left hand was caught between the cart and the door, leaving him injured.[9] Both parties agree on this basic set of facts. However, several details and Walmart's fault—if any—for the incident are disputed.

---

[4] Dkt. 18 at 3; Dkt. 26 at 2; Dkt. 26-5 (Alaska Regional Hospital After Visit Summary).

[5] Dkt. 35-1 at ¶ 11 (First Amended Complaint); Dkt. 18 at 2; Dkt. 18, Ex. E (surveillance video filed by Walmart as Exhibit E to the Motion); Dkt. 26, Ex. 3 (surveillance video filed by Plaintiff as Exhibit 3 to his Opposition); Dkt. 30, Ex. C (surveillance videos filed by Walmart as Exhibit C to its Reply) (showing the incident from four angles).

[6] Dkt. 18, Ex. E.

[7] Dkt. 18 at 2 ("The exterior automatic doors through which plaintiffs entered were set in partial-open mode which opens the doors to a width of 48 [inches]. Full-open mode was 60 [inches]. The doors which plaintiff used to exit were also set in partial-open mode."); Dkt. 26 at 2 (Walmart "set the exterior but not interior doors to reduced opening.").

[8] Dkt. 18, Ex. E.

[9] Dkt. 18 at 3 ("The shopping cart's wheels are well off the mat as Vincent Morgan attempts to push the cart through the doorway, hitting the door. This led to S. Morgan's hand being 'side-swiped' by the right side of the automatic doors."); Dkt. 26 at 2 ("Walmart's negligence resulted in its door fracturing infant [S.M.'s] left hand.").

2

B. *Disputed Facts*

Plaintiff claims primarily that Walmart created a hazard when it, without warning, "set[] the second set of doors to only open partially when the immediately preceding doors had just fully opened."[10] Plaintiff also claims Walmart failed to train its employees, including manager Matthew Lolley who was working at the time of the incident, about how to operate the automatic doors.[11] Because of this failure to train, Plaintiff argues, the doors were inadvertently set to partial-open mode on the day of the incident.[12] Plaintiff cites deposition testimony from Lolley in which says the door was set to open partially "pretty much" by mistake.[13] And Plaintiff asserts there was no legitimate reason for Walmart to use partial-open mode on the day of the incident.[14] Walmart does not directly respond to these allegations in its briefing.

For its part, Walmart claims that after the incident, a certified technician, Robert McGowen, "inspected the doors and found no malfunctions."[15] According to Walmart, McGowen found instead "that the doors were set in partial-open mode, which is an entirely safe mode that fully complies with code, and is designed to allow store owners to narrow the width of the doorway

---

[10] Dkt. 26 at 1.

[11] *Id.* at 5 ("Walmart failed to ever train its employee manager Matthew Lolley—who was on shift at the time of the incident—anything about how the automatic sliding doors at Walmart operated or were supposed to operate.").

[12] *Id.* at 7 ("Matthew Lolley testified that the exterior automatic doors had been set to reduced opening mode that day simply by mistake.").

[13] Dkt. 26-2 at 16 (Lolley Deposition) ("Q: Okay. So, the—the fact that it was put in the restricted opening mode, that was just a mistake basically? A: Pretty much. . . . [I]f that morning they had happened to switch i[t] to restrictive opening which it looked like they did to both the entrance and exit side doors, that day it just happened to get flipped to that side.").

[14] Dkt. 26 at 8.

[15] Dkt. 18 at 4.

3

to keep out inclement weather; and/or to keep in hot or cool air and save energy."[16] Walmart argues that the doors gave Plaintiff and his family "ample room of 11 [inches] on each side of the cart to push the cart through the doorway."[17] Going further, Walmart claims that Plaintiff and his family were on notice of the width of the doors from the time they entered the store and that the width of any doorway at eye-level would be open and obvious to any objective, reasonable person.[18] Thus, Walmart's theory is that Plaintiff is at fault for pushing the cart into the doorway.[19] While Plaintiff does not dispute that the exterior doors were set to partial-open mode,[20] he disagrees that partial-open mode is categorically safe and reasonable and disagrees that the width of the exterior automatic doorway was open and obvious under the circumstances.[21]

C. *Walmart's Motion for Summary Judgment*

Walmart makes two overarching arguments in support of summary judgment. First, Walmart argues no reasonable jury could find that any unsafe condition proximately caused the incident because "the mere fact that an accident occurs, does not evidence the landowner's

---

[16] *Id.*

[17] *Id.* at 5.

[18] *Id.* at 10.

[19] *Id.* at 11 ("The accident in this case occurred because Vincent Morgan failed to pay attention to where he was pushing the shopping cart and where he was in relation to the mat and doorway.").

[20] Plaintiff asserts in its Complaint that the doors "malfunctioned by failing to open as reasonably expected." Dkt. 35-1 at ¶ 10. In its briefing at summary judgment, Plaintiff apparently concedes the doors were set to partial-open mode, arguing "it was unsafe for Walmart to set the second set of doors to partially open." Dkt. 26 at 1.

[21] *See, e.g.*, Dkt. 26 at 2 ("Walmart's argument that it was perfectly safe and reasonable for its exterior doors to stop short unexpectedly as Mr. Morgan tried to exit the DeBarr Walmart with his family is reasonably disputed by Mr. Morgan, rendering summary judgment inappropriate."); *id.* at 13 (arguing the condition of the door was not open and obvious).

4

negligence" and "there is no duty to warn of an open and obvious condition such as the presence of automatic doors which need to be given time to open."[22] Second, Walmart argues it "had no duty to refrain from setting the doors in the entirely safe partial-open mode."[23] Walmart advocates that by denying its Motion, the Court would effectively "craft[] a new duty to not set automatic doors in reduced open mode."[24]

Walmart filed several exhibits in support of the Motion, including a surveillance video of the incident and declarations from Robert McGowan, the certified inspector/technician who inspected the automatic door after the incident; Michael Panish, a licensed door and door hardware contractor; and Matthew Lolley, the assistant store manager.[25]

*D. Plaintiff's Opposition*

Plaintiff responds generally that his claims are not susceptible to summary judgment because (1) Walmart had a duty under Alaska law "to act reasonably in maintaining its property in a reasonably safe condition in view of all the circumstances"[26] and (2) there is a genuine dispute as to whether Walmart acted reasonably under the circumstances.[27] Plaintiff also asserts that to the extent Walmart argues the incident was Plaintiff's fault, the issue of comparative negligence is one

---

[22] Dkt. 18 at 7–11.

[23] *Id.* at 11–13.

[24] *Id.* at 12.

[25] Dkt. 18, Ex. E; Dkt. 18-6 (McGowan Declaration); Dkt. 18-7 (Panish Declaration); Dkt. 18-10 (Lolley Declaration); *see also* Dkts. 18-1, 18-2, 18-3, 18-4 (Images from Surveillance Video); Dkt. 18-8 (Plaintiff's Responses to Defendant's Requests for Admission); Dkt. 18-9 (Plaintiff's Responses to Defendant's Requests for Production).

[26] Dkt. 26 at 4.

[27] *Id.* at 9.

5

for the jury to decide.[28] Plaintiff then turns to the merits of his claim. In arguing that Walmart was negligent, Plaintiff relies on several steps Walmart purportedly took following the incident,[29] among other evidence including the store's surveillance footage.

Like Walmart, Plaintiff filed several exhibits with his briefing. These exhibits include a transcript from Lolley's deposition; an affidavit from Jerry Birnbach, an "expert in retail safety"; a surveillance video of the incident; S.M.'s medical records; and the customer incident report from Walmart.[30]

### E. Walmart's Reply

In addition to reiterating and expanding on its arguments, Walmart asserts in reply that Jerry Birnbach's statement is inadmissible under Federal Rule of Evidence 702, which governs the admissibility of expert testimony.[31] Walmart argues Birnbach's statement "is inadmissible not only because it is conclusory and unsworn, but it also lacks foundation and is not helpful to the

---

[28] *Id.* at 13.

[29] *Id.* at 8. For example, Plaintiff asserts Walmart locked the doors in place immediately after the incident, switched the doors back to full-open mode, and "now routinely makes sure the doors are set to the normal opening mode when there is not what Walmart considers an adequate reason to set them to [partial-open] mode, such as for inclement weather." *Id.* Walmart asks the Court not to consider this evidence as it is inadmissible under Federal Rule of Evidence 407, which prohibits a party from introducing evidence of subsequent remedial measures to prove negligence. Dkt. 30 at 2 (citing Fed. R. Evid. 407). The Court agrees with Walmart. Without ruling on the ultimate admissibility of this evidence at trial, the Court will not consider this evidence in deciding the Motion. *See* Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."); Fed. R. Evid. 407 (while evidence of subsequent remedial measures is inadmissible to prove negligence and other enumerated prohibited purposes, "the court may admit this evidence for another purpose").

[30] Dkt. 26-2; Dkt. 26-3 (Birnbach Affidavit); Dkt. 26-3 (Birnbach CV); Dkt. 26, Ex. 3; Dkt. 26-5; Dkt. 26-6 (Customer Incident Report); *see also* Dkt. 26-7 (Automatic Door Service Ticket); Dkts. 26-9, 26-10 (Orders Denying Summary Judgment).

[31] Dkt. 30 at 8–12.

court."[32] In addition, Walmart argues that Birnbach does not purport to be a human factors expert or an expert in accident reconstruction.[33]

### III. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), a party may move for summary judgment on a claim, a defense, or a part of either. Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[34] Material facts are those that may affect the outcome of the case, and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."[35] In deciding whether there is a genuine dispute of material fact, a court must view the facts and justifiable inferences to be drawn therefrom in the light most favorable to the nonmoving party.[36] Thus, the court is prohibited from weighing the evidence or resolving disputed facts in the moving party's favor.[37] The court's function is rather to "determine whether there is a genuine issue for trial."[38]

"The moving party bears the initial burden of establishing the absence of a genuine issue of material fact."[39] "If a moving party fails to carry its initial burden of production, the nonmoving

---

[32] *Id.* at 9.

[33] *See, e.g.*, *id.* at 8–10; *see also* Dkts. 30-1, 30-2, 30-4 (Exhibits A, B, and D) (responding to Birnbach's statement).

[34] Fed. R. Civ. P. 56(a).

[35] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[36] *Id.* at 255.

[37] *Tolan v. Cotton*, 572 U.S. 650, 657 (2014).

[38] *Anderson*, 477 U.S. at 249.

[39] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

7

party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial."[40] But once the moving party properly supports its motion, the nonmoving party "must come forward with 'specific facts showing that there is a genuine issue for trial.'"[41]

In a diversity case in which, as here, substantive Alaska law applies, the Court nevertheless "look[s] to federal law" to determine "whether certain evidence on a particular issue is sufficient to raise a question for the jury."[42]

## IV. ANALYSIS

The Court concludes there remain genuine disputes of material fact and **DENIES** the Motion accordingly.

Under Alaska law, a plaintiff in a negligence case must show the defendant owed the plaintiff a duty of care, the defendant breached that duty, the plaintiff was injured, and the defendant's breach of duty was the proximate cause of the plaintiff's injury.[43] While the existence of a duty is a question of law, the remaining elements are generally questions of fact.[44] "[I]n

---

[40] *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102–03 (9th Cir. 2000).

[41] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)).

[42] *Neely v. St. Paul Fire & Marine Ins. Co.*, 584 F.2d 341, 345 (9th Cir. 1978).

[43] *Edenshaw v. Safeway, Inc.*, 186 P.3d 568, 571 (Alaska 2008), abrogated in part on other grounds by *Buntin v. Schlumberger Tech. Corp.*, 487 P.3d 595 (Alaska 2021).

[44] *Stewart v. Elliott*, 239 P.3d 1236, 1239, n.16 (Alaska 2010); *Winschel v. Brown*, 171 P.3d 142, 148 (Alaska 2007).

8

Case 3:20-cv-00213-TMB   Document 37   Filed 06/21/22   Page 8 of 14

general, issues of negligence are 'not susceptible to summary determination' and are better left to the trier of fact."[45]

Here, Walmart does not dispute that S.M. was injured but argues it is entitled to summary judgment because Plaintiff cannot establish either that Walmart owed Plaintiff a duty to refrain from setting its automatic doors to partial-open mode or that Walmart proximately caused S.M.'s injury.[46] The Court disagrees for the reasons stated below.

A. Duty and Breach

Alaska law establishes Walmart owed Plaintiff a duty in this case. As a landowner, Walmart had a duty to "act as a reasonable person in maintaining [its] property in a reasonably safe condition in view of all the circumstances, including the likelihood of injury to others, the seriousness of the injury, and the burden on the respective parties of avoiding the risk."[47] Walmart asks the Court to construe its duty more narrowly, arguing the question is whether it had a duty to refrain from setting the doors to partial-open mode.[48] But the Court need not define Walmart's duty narrowly at summary judgment: "when determining the existence of a duty of care, summary judgment is appropriate where 'the only reasonable inference from the undisputed facts is that one

---

[45] *Edenshaw*, 186 P.3d at 570.

[46] *See generally* Dkt. 18; Dkt. 30.

[47] *Edenshaw*, 186 P.3d at 570. Because Alaska Supreme Court precedent establishes a duty in this case, the Court need not weigh the public policy considerations enumerated in *D.S.W. v. Fairbanks N. Star Borough Sch. Dist.*, 628 P.2d 554 (Alaska 1981). *See Est. of Mickelsen ex rel. Mickelsen v. N.-Wend Foods, Inc.*, 274 P.3d 1193, 1199 (Alaska 2012) ("We use a three-step process to determine whether a duty of care exists. First, we look for a duty imposed by statute. If none exists, we then determine if the current case falls in the class of cases controlled by existing precedent. If no closely related case law exists, we weigh the public policy considerations enumerated in *D.S.W.*").

[48] Dkt. 18 at 11; Dkt. 30 at 12.

9

party owed another no duty whatsoever—or owed a duty clearly and vastly narrower in scope than the one that the other party asserts.'"[49] It follows that "[s]ummary judgment is generally disfavored when the parties do not dispute the existence of a duty, but the scope of that duty is disputed."[50] Here, Walmart does not disclaim a general duty as a landowner. And based on the evidence presented, the Court easily finds Walmart owed at least some duty to Plaintiff.

In fact, Walmart's argument is better categorized under the second element in a negligence case: breach. In other words, the question is not whether Walmart had a duty to refrain from setting the doors in partial-open mode but whether in doing so, Walmart breached its duty to maintain its property in a reasonably safe condition in view of all the circumstances.[51] While Walmart does not raise this argument, the Court finds the issue of breach—an issue of fact[52]—is disputed. Plaintiff argues Walmart breached its duty by, among other acts, arbitrarily setting the doors to partial-open mode without warning. Plaintiff supports this argument with Lolley's testimony that the doors were inadvertently set to partial-open mode and with surveillance footage of the incident showing the Morgans leaving the store.[53] Viewing this evidence in the light most favorable to the Plaintiff

---

[49] *Hurn v. Greenway*, 293 P.3d 480, 483 (Alaska 2013); *Chitwood v. Bacon*, No. 3:20-CV-00122-HRH, 2022 WL 621866, at *3 (D. Alaska Mar. 3, 2022).

[50] *Chitwood*, 2022 WL 621866, at *3.

[51] *Edenshaw*, 186 P.3d at 570.

[52] *Stewart*, 239 P.3d at 1239, n.16.

[53] *See, e.g.*, Dkt. 26 at 2, 7.

for the purposes of the Motion, the Court finds a reasonable jury could conclude Walmart breached its duty to Plaintiff.[54]

Further, the Court is not compelled by Walmart's alternative argument that the width of the doorway was open and obvious as a matter of law, relieving Walmart of any duty to warn.[55] On this issue, the Court agrees with the district court in *Sumate v. Wal-Mart, Inc.*,[56] which found as follows:

> Common experience with automatic doors does not suggest that the doors will only partially open. Customers who see an automatic door opening in front of them generally advance through the doorway without stopping to wait for the door to fully open. This general practice is evident from the Wal-Mart surveillance video. Customers stream into the store through the sliding doors while they are sliding apart and before the doors fully open. It is not an open and obvious danger that automatic sliding doors will malfunction by beginning to open, but then abruptly stopping at a reduced opening width. The Court holds that Wal-Mart's duty to provide a reasonably safe premises was not obviated by the open and obvious danger doctrine.[57]

Here too, the surveillance videos show customers "stream into the store through the sliding doors while they are sliding apart and before the doors fully open."[58] And although Walmart asserts Plaintiff had entered the store "through the adjacent entrance doors set in the same reduced-mode

---

[54] In addition, although Walmart asserts that partial-open mode "fully complies with code," Dkt. 18 at 4, it cites no authority suggesting that proof of such compliance establishes due care in the defense of a negligence claim. *See generally* Dkt. 18; Dkt. 30.

[55] The Court agrees with Walmart that Alaska courts have applied the open and obvious doctrine, at least in some negligence cases. *See, e.g.*, *McGlothlin v. Mun. of Anchorage*, 991 P.2d 1273, 1279 (Alaska 1999); *West v. City of St. Paul*, 936 P.2d 136, 139–40 (Alaska 1997). *Compare* Dkt. 26 at 12 (arguing "Alaska has not adopted any 'open and obvious' test") *with* Dkt. 30 at 4 (citing Alaska cases in which the court applied the open and obvious doctrine).

[56] No. 1:20-CV-911, 2022 WL 44666 (S.D. Ohio Jan. 5, 2022).

[57] *Id.* at *4 (internal citation omitted).

[58] *See* Dkt. 18, Ex. E.

11

just 15 minutes before," it is not apparent that an objective reasonable person would have noticed the width of the doors upon entry or, if they did, recalled the width later when leaving the store and assumed the adjacent exit doors were also set to partial-open mode. To the contrary, the surveillance video shows several customers entering and exiting the store without pausing to "discover the doorway's dimensions," as Walmart argues a reasonable person would.[59] By contrast, in *McGlothlin v. Municipality of Anchorage*,[60] upon which Walmart relies, the Court found the defendant had no duty to warn the plaintiff about an open and obvious condition—in that case, the weight of a scoreboard the plaintiff had previously lifted—of which the plaintiff was *admittedly* aware.[61] Of course, Walmart is not precluded from raising this issue to the jury by arguing an objective, reasonable person would have noticed the width of the door and, accordingly, that Plaintiff was negligent. But the Court cannot conclude at summary judgment that the width of sliding automatic doors set to open partially is plainly an "open and obvious condition" that would obviate Walmart's duty in this case.

B. Proximate Cause

Turning to proximate cause, a reasonable jury could find based on the evidence presented that a breach of Walmart's duty of care proximately caused S.M.'s injury. "Determinations of proximate cause usually involve questions of fact within the province of the jury; proximate cause becomes a matter of law only where reasonable minds cannot differ."[62]

---

[59] *Id.*; Dkt. 30 at 7.

[60] 991 P.2d 1273 (Alaska 1999).

[61] *Id.* at 1279 ("McGlothlin admits he removed the scoreboard from the rack prior to loading it into the truck and was aware of its weight. MOA/Ogden had no duty to warn McGlothlin of an open and obvious condition of which McGlothlin was aware.").

[62] *Winschel*, 171 P.3d at 148.

Walmart argues Plaintiff cannot establish proximate cause because "the mere fact that an accident occurs, does not evidence the landowner's negligence"[63] and "[a] jury could only speculate as to whether the doors, as opposed to [] Morgan's failure to wait for the doors to open, proximately caused [S.M.'s] injury."[64] Plaintiff responds that "[j]urors should view the video showing the incident and compare it to Walmart's position that the doors were operating normally and safely, or that [] Morgan should have stopped abnormally in his tracks and waited for the exterior automatic doors to fully open and stop before proceeding forward."[65]

The Court concludes that the surveillance videos establish a dispute of fact as to proximate causation and disagrees that a jury could only speculate as to the cause of S.M.'s injury. As Plaintiff argues, he will present the jury with more than the mere fact an accident occurred. For example, Plaintiff will introduce surveillance footage and evidence of Walmart's conduct leading up to the incident, both which would allow a reasonable jury to infer whether Walmart and Plaintiff acted reasonably under the circumstances. The presence of some uncertainty about the precise allocation of fault does not require summary judgment.[66] Again, Walmart is not precluded from arguing Plaintiff was negligent: comparative fault is an issue for the jury. Accordingly, Walmart is not entitled to summary judgment on the issue of causation.

---

[63] Dkt. 18 at 7.

[64] *Id.* at 11.

[65] Dkt. 26 at 9.

[66] *See Fischer v. Home Depot U.S.A., Inc.*, No. 3:18-CV-00226-SLG, 2019 WL 4131699, at *6 (D. Alaska Aug. 30, 2019) ("Home Depot contends that [proximate causation] cannot be satisfied because it is impossible to determine whether the shoplifter bolted because of the alarm system or Mr. McKitrick's conduct. However, this uncertainty would not preclude a jury from making a reasonable inference as to causation based on the evidence before it.").

13

Case 3:20-cv-00213-TMB Document 37 Filed 06/21/22 Page 13 of 14

*C. Birnbach's Statement*

Finally, the Court declines to consider Birnbach's statement in deciding the Motion. As shown above, the Court was able to resolve the Motion in Plaintiff's favor without considering Birnbach's opinion and, therefore, without deciding whether his testimony would be admissible at trial. That issue is better suited to motions *in limine* at which time the Court would have the benefit of briefing from both parties.

## V.   CONCLUSION

For the foregoing reasons, Walmart's Motion for Summary Judgment at Docket 18 is **DENIED**.

IT IS SO ORDERED.

Dated at Anchorage, Alaska, this 21st day of June, 2022.

/s/ _Timothy M. Burgess_
TIMOTHY M. BURGESS
UNITED STATES DISTRICT JUDGE